1

2

3

4

5

6

7

8

9
                     UNITED STATES DISTRICT COURT

10
                    EASTERN DISTRICT OF CALIFORNIA

11
                          ----oo0oo----

12
    PAMELA WOODCOX, EUGENE            CIV. NO. 2:17-215 WBS DB
13  WOODCOX, MICHELLE CONTRERAS,
    and LOUIS CONTRERAS,              MEMORANDUM AND ORDER RE: MOTION
14                                    TO REMAND AND MOTION TO STAY

15                Plaintiffs,
    v.
16
    VOLKSWAGEN GROUP OF AMERICA,
17  INC., D/B/A VOLKSWAGEN OF
    AMERICA, INC.; VOLKSWAGEN AG;
18  ROSEVILLE VOLKSWAGEN, LLC;
    THE NIELLO COMPANY; and DOES
19  1 through 50, inclusive,

20                Defendants.

21
                          ----oo0oo----
22
            Plaintiffs Pamela Woodcox, Eugene Woodcox, Michelle
23
    Contreras, and Louis Contreras brought this action in the
24
    Sacramento County Superior Court against defendants Volkswagen
25
    Group of America, Inc.; Volkswagen AG; Roseville Volkswagen, LLC;
26
    and the Niello Company for damages arising out of defendants'
27
    alleged installation of illegal "defeat devices" in certain
28

                                  1

1   automobiles to avoid detection and enforcement of Environmental

2   Protection Agency ("EPA") and state vehicle emissions

3   regulations.  Defendants removed the action to this court on

4   January 31, 2017.  Presently before the court are plaintiffs'

5   Motion to Remand and defendants' Motion to Stay this case pending

6   transfer to the Northern District of California pursuant to 28

7   U.S.C. § 1407.

8   I.   Factual and Procedural History

9        In 2015, the EPA and the California Air Resource Board

10  ("CARB") issued Notices of Violation to Volkswagen Group of

11  America for alleged violations of the federal Clean Air Act

12  ("CAA").  (Compl. ¶¶ 73-74 (Docket No. 1-2).)  Volkswagen

13  allegedly installed illegal software-based "defeat devices" in

14  certain diesel vehicles, which "reduce[] the effectiveness of the

15  emission control systems" and produce "compliant emission

16  results" only "when the vehicle was being tested for compliance

17  with EPA emissions standards."  (Id. ¶¶ 31, 68-69, 72-73.)  As a

18  result, Volkswagen's vehicles allegedly emitted levels of

19  pollutants up to forty times above EPA- and CARB-compliant levels

20  during normal operation.  (Id. ¶ 69.)

21       Volkswagen's actions resulted in well over 1,000

22  actions across the United States for their sale of purportedly

23  "clean diesel" vehicles containing these defeat devices.  The

24  Judicial Panel on Multidistrict Litigation ("JPML") has

25  consolidated over 1,200 cases of these cases into a federal

26  multidistrict litigation in the United States District Court for

27  the Northern District of California ("MDL court").  In re:

28  Volkswagen Clean Diesel Mktg., Sales Practices, and Prod. Liab.

1  Litig., MDL No. 2672, Conditional Transfer Order 85 (J.P.M.L.
2  Feb. 21, 2017).

3          Plaintiffs filed the instant action in state court,
4  incorporating part of the consolidated consumer class action
5  complaint in the MDL court and bringing separate California state
6  law claims.  Plaintiffs allege the following causes of action:
7  (1) violation of California Unfair Competition Law ("UCL"); (2)
8  violation of California False Advertising Law; (3) breach of
9  express warranty under the Song-Beverly Consumer Warranty Act;
10  (4) violation of the California Consumer Legal Remedies Act; (5)
11  fraud by concealment; and (6) negligent misrepresentation.
12  (Compl.)  Defendants subsequently removed the case to federal
13  court on the basis of federal question jurisdiction.  (Docket No.
14  1.)

15          On February 6, 2017, plaintiffs filed a motion to
16  remand the case to state court for lack of subject matter
17  jurisdiction, arguing that the case implicates only California
18  law.  (Mot. to Remand (Docket No. 5-2).)  Defendants,
19  anticipating transfer of this case to the MDL court, then moved
20  to stay this action.  (Mot. to Stay (Docket No. 6-1).)  On
21  February 10, 2017, the JPML issued a Conditional Transfer Order
22  ("CTO") indicating its decision that this case should be
23  transferred to the MDL court.  (Oswell Decl., Ex. B at 2 (Docket
24  No. 12-3).)  Plaintiffs filed a notice of opposition to the CTO
25  and then moved to vacate the CTO pursuant to J.P.M.L. Rule 7.1.

26  II.  Discussion

27       A.   Order of Pending Motions

28          As an initial matter, the court must determine which

motion--plaintiffs' motion to remand or defendants' motion to stay--to entertain first.  Generally, jurisdiction is a preliminary matter that should be resolved before all others. Smith v. Mail Boxes, Etc., 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002) ("[J]urisdictional issues should be resolved before the court determines if a stay is appropriate.").  However, the approach changes when deference to an MDL court will further "the uniformity, consistency, and predictability in litigation that underlies the MDL system." Conroy v. Fresh Del Monte Produce Inc., 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004).  The MDL court can resolve a motion to remand when "the motion raises issues likely to arise in other actions pending in [the consolidated action]."  Id.; see also In re Vioxx Prods. Liab. Litig., 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("[M]otions to remand . . . can be presented to and decided by the transferee judge.").

Several courts, including this one, have applied the Conroy methodology when considering simultaneous motions to remand and stay in the MDL context.  See, e.g., Beshear v. Volkswagen Grp. of Am., Inc., Civ. No. 16-cv-27-GFVT, 2016 WL 3040492, at *2-6 (E.D. Ky. May 25, 2016); Leeson v. Merck & Co., Inc., Civ. No. 2:05-2240 WBS PAN, 2006 WL 3230047, at *2-4 (E.D. Cal. Jan. 27, 2006).  "First, the court should [scrutinize] the merits of the motion to remand" and consider it in full if "this preliminary assessment suggests that removal was improper." Conroy, 325 F. Supp. 2d at 1053.  Second, "if the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred

to the MDL proceeding." Id. "[I]f the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred, the court should stay the action." Id.; see also Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1048-49 (E.D. Wis. 2001).

Applying this methodology, the court finds that a stay is proper. First, in light of the defendants' subject matter jurisdiction arguments, "removal was not plainly improper." See Leeson, 2006 WL 3230047, at *3. Defendants removed this case to federal court, arguing plaintiffs' state law claims necessarily require the resolution of substantial federal law issues. Federal question jurisdiction exists over state law claims "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013) (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2008)).

"When a claim can be supported by alternative and independent theories--one of which is a state law theory and one of which is a federal law theory--federal question jurisdiction does not attach because federal law is not a necessary element of the claim." Rains v. Criterion Sys., Inc., 80 F.3d 339, 346 (9th Cir. 1996). Some of plaintiffs' claims do not necessarily raise federal law questions. Plaintiffs allege, for example, that defendants violated the UCL by violating federal and state emissions laws. (Compl. ¶ 90.) Thus, the UCL claim may, but does not necessarily, turn on federal law issues. However, it is

not plainly clear from the Complaint that there are theories for each claim that do not necessarily require resolution of a federal law issue.

Additionally, the entire action arose out of the EPA's notice of violation by defendants for their use of "defeat devices." (Id. ¶¶ 1-2.)  The Complaint repeatedly alleges that defendants sold vehicles exceeding emissions standards using "defeat devices"--a term defined by federal law--which is a substantial issue in this litigation.  See 40 C.F.R. § 1045.115(g) ("A defeat device is an auxiliary emission control device that reduces the effectiveness of emission controls under conditions that the engine may reasonably be expected to encounter during normal operation and use.").  The Complaint also specifically incorporates many portions of the amended consolidated consumer class action complaint in the MDL court, further complicating this jurisdictional issue.  (See Compl. ¶ 1.)  Lastly, defendants argue that allowing the court to hear this issue would not disrupt the federal-state balance approved by Congress because Congress desires uniform application of environmental regulations and the CAA.  See Beshear, 2016 WL 3040492, at *5.

Plaintiffs argue that no federal issue is "actually disputed" because Volkswagen's CEO admitted to the use of software that defeats emissions tests while testifying before Congress.  This argument is weakened by the fact that the same alleged factual scenario has led to litigation across the country.  Many courts across the country have evaluated this issue, with outcomes on both sides.  Compare id. at *4 (finding

there may be disputed federal issues and thus a stay is proper
under Conroy), with Springsted v. Valenti Motors, Inc., 2016 WL
2977235, at *3 (D. Conn. May 20, 2016) (finding it is unclear
whether there is an actual dispute and thus remand is proper).

It is unclear at this juncture to what extent
plaintiffs' claims depend on allegations of fraud and
misrepresentations rather than a disputed issue of federal law.
See Beshear, 2016 WL 3040492, at *4.  Since this preliminary
assessment is only a limited inquiry, defendants' federal
question jurisdiction arguments are not clearly baseless.  See
Leeson, 2006 WL 3230047, at *3.

Second, the jurisdictional issue here is similar to
jurisdictional issues in cases already transferred to the MDL
court.  Several cases already transferred to the MDL court
contain the precise jurisdictional question at issue here--
whether plaintiffs' state law claims for relief are based upon a
disputed issue of federal law.  See, e.g., Hess v. Volkswagen
Grp. of Am., Inc., Civ. No. 2:16-cv-668-KOB, 2016 WL 3483166
(N.D. Ala. June 27, 2016).  For example, the JPML, in its final
transfer order for 41 actions, noted that 40 cases had pending
motions for remand.  (Hogberg Decl., Ex. M (Docket No. 6-15).)
Furthermore, several related cases in California district courts
have been stayed and subsequently transferred while motions for
remand were pending on the same issue of federal question
jurisdiction.  See, e.g., Ackers v. Volkswagen Grp. of Am., Inc.,
Civ. No. 2:16-1942 JAM CKD (E.D. Cal. Aug. 26, 2016), ECF No. 5;
Alvarado v. Lasher Auto Grp., Civ. No. 2:16-979 (June 14, 2016),
ECF No. 12; Wilke v. Volkswagen of Downtown L.A., Civ. No. 2:16-

1  3087 DOC SP (C.D. Cal. June 6, 2016), ECF No. 18.

2          Further, this case shares "common question[s] of fact"

3  with other cases already transferred to the MDL court.  28 U.S.C.

4  § 1407(a).  Plaintiffs here, like plaintiffs in the MDL action,

5  are private consumers.  The cases all involve the key question

6  related to the defendants' alleged use of "defeat devices."

7  Finally, there are many cases brought by California consumers

8  under California state law.  See, e.g., Alvarado, Civ. No. 2:16-

9  979, ECF No. 12.  Consequently, "identical or similar

10 jurisdictional issues have been raised in other cases that have

11 been or may be transferred to the MDL proceeding."  Conroy, 325

12 F. Supp. 2d at 1053.

13         Because jurisdiction is a threshold issue and the MDL

14 court has many consumer actions bringing state law claims with

15 pending motions to remand, the MDL court will necessarily need to

16 rule on the motions to remand.  The Conroy methodology suggests

17 that the court should rule upon defendants' motion to stay.

18      B.   Motion to Stay

19         The power to stay proceedings "is incidental to the

20 power inherent in every court to control the disposition of the

21 causes on its docket with economy of time and effort for itself,

22 for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S.

23 248, 254 (1936).  Moreover, a stay and deference to the MDL court

24 are particularly appropriate when the parties contest issues that

25 are "likely to arise in other actions pending" in the

26 consolidated proceedings.  Conroy, 325 F. Supp. 2d at 1053.  In

27 evaluating whether to stay proceedings, the court is concerned

28 with balancing competing interests and should consider: "(1)

1  potential prejudice to the non-moving party; (2) hardship and

2  inequity to the moving party if the action is not stayed; and (3)

3  the judicial resources that would be saved by avoiding

4  duplicative litigation if the cases are in fact consolidated."

5  Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal.

6  1997); see also Landis, 299 U.S. at 254-55; CMAX, Inc. v. Hall,

7  300 F.2d 265, 268 (9th Cir. 1962).

8        First, as to prejudice to plaintiffs, plaintiffs argue

9  that a stay will place their case in a "procedural limbo" in the

10 MDL court with hundreds of other cases where they will be

11 unfairly prejudiced by a delay in proceedings.  (Pls.' Opp'n

12 8:11-18 (Docket No. 14).)  This argument is weakened by the fact

13 that there are several other cases consolidated in the MDL court

14 from other federal California district courts that have pending

15 motions to remand on the exact same issue.  Plaintiffs would

16 likely be able to have their motion to remand heard at the same

17 time as the other California plaintiffs' motions.

18       The court is mindful that there may be some delay or

19 inconvenience to plaintiffs if a stay is granted.  "But if this

20 case is transferred to the MDL, the efficiencies gained through

21 the MDL will benefit all parties."  Lessard v. Volkwagen Grp. of

22 Am., Inc., Case No. 16-cv-0754 (WMW/TNL), 2016 WL 3004631, at *2

23 (D. Minn. May 24, 2016).  Granting a stay will not preclude

24 plaintiffs from seeking remand in the MDL court, and plaintiffs

25 may very well benefit from the perspectives of plaintiffs'

26 counsel in other cases with pending motions to remand.  The stay

27 may also be brief if the JPML grants plaintiffs' motion to vacate

28 the conditional transfer of this case to the MDL court.  Further,

other courts have stayed cases pending transfer to an MDL court
when "plaintiffs have not demonstrated any prejudice in the event
of a stay except the slight delay in deciding the remand motion."
See, e.g., Med. Soc'y of N.Y. v. Conn. Gen. Corp., 187 F. Supp.
2d 89, 92 (S.D.N.Y. 2001).

Second, the potential hardship and inequity to
defendants weighs heavily in favor of a stay.  If this court
considers and denies plaintiffs' motion to remand, plaintiffs may
have a second chance before the MDL court if the case is
subsequently transferred because the MDL court will necessarily
need to address motions to remand in the several cases already
transferred.  "[Defendants] should not have to defend against the
same motion repeatedly brought by the same plaintiff[s]."  See
Leeson, 2006 WL 3230047, at *4.  Conversely, if this court
determines that defendants improperly removed this case but the
MDL court holds removal was proper in the other California cases,
defendants will be stuck with a decision in this case that is
inconsistent with the majority of other similar cases involving
purely California state law claims.  See A.D. v. Pfizer, Inc.,
Case No. 13-cv-2466-JST, 2013 WL 3889159, at *2 (N.D. Cal. July
26, 2013) ("On the other hand, Defendants would face the risk of
unnecessary proceedings and inconsistent rulings on recurring
questions of law and fact if the case is not stayed.").  Yet
defendants would not be able to appeal an order granting remand.
Kunzi v. Pan Am. World Airways, Inc., 833 F.2d 1291, 1293 (9th
Cir. 1987) ("Remand orders . . . are immune from appellate review
. . . even if the district court's jurisdictional decision was
erroneous.").

1        Denying a stay will also require defendants to

2   potentially respond to any other pretrial matters raised by

3   plaintiffs that the MDL court could decide.  Each pretrial matter

4   adjudicated by this court increases the risk of inconsistent

5   rulings and prejudices defendants' ability to defend themselves

6   in the actions with similar allegations and issues.  See Pfizer,

7   2013 WL 3889159, at *2.

8        Third, judicial economy weighs in favor of a stay.  The

9   goal of the MDL court is to coordinate pretrial management of

10  actions with common facts.  28 U.S.C. § 1407.  A stay pending the

11  JPML's decision to consolidate this action in the MDL court

12  increases efficiency and consistency, especially "when the

13  pending motions raise issues likely to be raised in other cases."

14  Manual for Complex Litigation (Fourth) § 22.35; see Meyers, 143

15  F. Supp. 2d at 1053 ("[J]udicial economy clearly favors a stay"

16  when the "other cases present the same or a similar issue.").

17       There are a vast number of cases already consolidated

18  in the MDL court, including cases with pending motions to remand

19  based on lack of federal question jurisdiction.  While the MDL

20  court has cases from many different states, which implicates

21  different state laws, there are several cases before the MDL

22  court that concern the precise issue here--whether California

23  state law claims against defendants necessarily require the

24  resolution of a federal law issue.  Granting a stay pending

25  resolution by the MDL court prevents repetitive decisions and the

26  use of excessive and unnecessary judicial resources.  See Rivers,

27  980 F. Supp. at 1360-61.  Finally, the MDL court has presided

28  over the multidistrict litigation for well over a year and

11

1   already established a procedure for many aspects of the MDL,

2   including the filing and briefing of motions for remand.  (See

3   Hogberg Decl., Ex. C (Docket No. 14-4).)  The already-set

4   procedures and the MDL court's extensive knowledge of the

5   underlying facts favor granting a stay.

6          If this case is transferred to the MDL court, the MDL

7   court will potentially be in a better position to address

8   plaintiffs' motion to remand and any other pretrial matters.

9   "Given the fact that hundreds of similar cases have been

10  transferred already, and the likelihood of many more cases being

11  in a similar procedural posture, the interests of judicial

12  economy and the threat of inconsistent rulings outweighs any

13  potential prejudice to the [plaintiffs]."  Beshear, 2016 WL

14  3040492, at *8.  Accordingly, the court will grant defendants'

15  motion to stay the proceedings pending transfer of this action to

16  the MDL court.

17         IT IS THEREFORE ORDERED that defendants' Motion to stay

18  be, and the same hereby is, GRANTED.

19         IT IS FURTHER ORDERED that plaintiffs' Motion to remand

20  be, and the same hereby is, DENIED WITHOUT PREJUDICE.

21  Dated:  March 7, 2017

22                          WILLIAM B. SHUBB
                            UNITED STATES DISTRICT JUDGE
23

24

25

26

27

28

12